## No. 10,239.

### BARBER ASPHALT PAVING COMPANY VS. H. R. GOGREVE.

1. If counsel entertain the opinion that the provisions of two different statutes are not inconsistent, they may urge them alternatively in their pleadings, as the parties appear to have done in their proceedings; and their right so to do cannot be tested by a dilatory exception.

2. Section 1 of Act 73 of 1876 is, by implication, repealed by Section 32 of Act 20 of 1882, but the remainder of said act is in full force and operation.

3. Practically, there can be no effective competition at public auction, for the award of a contract for street paving, if the specifications of the City Surveyor call for a patented pavement.

4. The provisions of Article 209 of the Constitution have *exclusive* reference to *ad valorem* taxation, for the *sole* purpose of revenue, and do not apply to special assessments for street improvement. Hence the forced contributions ought of the defendant is neither illegal nor unconstitutional.

5. A vote of the property taxpayers is unnecessary to authorize a street improvement in the City of New Orleans; it is matter within legislative discretion, under the provisions of Article 46 of the Constitution.

6. Section 3 of Act 73 of 1876 makes the certificates of designated city officials *prima facie* proof of the contractor's compliance with the contract, and of his due performance of its obligations; and such contract, when evidenced by a notarial act, as *prima facie* proof of the due observance of antecedent forms and requirements of law; hence, the *onus probandi* is cast upon the resisting front proprietor to disprove the same.

7. The majority of owners, within the meaning of Sections 32, 33 and 34 of Act 20 of 1882, are construed, by Section 35 of that statute, "to be the *owner or owners* of a majority of running feet of property fronting on the street, or portion of the street to be paved;" and this interpretation applies with equal force to the petitioning property owners as to opposing memorialists.

8. The statute provides that *a street* shall be *a unit*, for the purposes of all computations.

9. The law fixes the proportionate share or the cost of paving, to be borne by the abutting property owners and the city, respectively, in case the work is done upon a neutral ground street, and there was no necessity of a provision to that effect being incorporated in the specifications, or the contract; and same are not invalid for the want of it.

Asphalt Paving Company vs. Gogreve.

10. The right of the city to stipulate, in a paving contract, for the payment of eight *per cent per annum* interest, by a defaulting front proprietor, on the amount due by him or his proportionate share of the cost of construction, is implied from her power to adjudicate the work and to make a contract therefor. The stipulation of any rate of interest not exceeding eight per cent is an incident of the property owner's obligation, and is binding as any part thereof.

11. In case thé contractor for street paving relies, for his *remedies*, in the enforcement of his contract and for the ascertainment of the proportionate share of the cost of the work due by the abutting proprietors, on one statute, and upon another, as to all matters of *form*, only, it is expedient and proper that the latter, alone, should have been mentioned in the proceedings. *Vide* paragraph 1, *supra*.

PPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Leovy & Blair* for Plaintiff and Appellee:

1. Sections 2 and 3 of the Act of 1876 (p. 116) are not repealed by Act of 1882 (p. 14). The later Act repeals any and " all laws in conflict, inconsistent with or contrary to the provisions of this Act." Sec. 78, p. 37. The Act of 1886 (No. 113) expressly recognizes this section as unrepealed. Repeals by implication are never favored. 24 Ann. 116. See also on this point Hennen's Dig., p. 789, No. 15 ; p. 790, No. 20, No. 21 ; 12 Ann. 498, 805. Subsequent laws do not repeal prior laws by containing different provisions. They must be contrary. 20 Ann. 140 ; Louque's Digest, p. 363, No. 2 ; and see p. — of this brief.

2. The Statutes of 1876 and of 1882 are constitutional. Hennen's Dig. pp. 1544 and 937 ; 38 Ann. 325 ; 39 Ann. 455 (and page — of this brief).

3. Plaintiff is entitled to the interest claimed. 3 R. R. 406.

4. The contract in this case was in no sense for a patented pavement. There is no conflicting evidence on this point ; but even if there was doubt as to this fact, contracts for patented pavements may be legally made under all the later decisions. 26 Ann. p. 1 ; (and decisions referred to in that case) ; 17 Mich. 246 ; (Judge Cooley's opinion) ; 15 Kansas ; 56 Barbour, 1 ; 6 Lansing, 92 ; 50 N. Y. 319 ; 33 N. Y. 309.

5. Work is presumed to be done in accordance with specifications, in manner and time. Act 1876, Sec. 3 (p. 116) ; 7 Ann. 25 ; 14 Ann. 297, 295 ; 15 Ann. 376 ; 17 Ann. 183 ; 27 Ann. 59 ; 30 Ann. 250 ; 29 N. J. 401 ; Cooley on Taxation, p. 468 ; 1 Wallace, 223 ; besides the evidence proves it was so done.

6. Property holders are estopped if they do not object at the proper time. 26 Ann. p. 1 ; 5 Ann. 108 ; Hennen's Dig. 512, No. 6 ; Boone on Corporations, p. 295 (and his references) ; 96 U. S. 341 ; 65 Barbour, p. 1 ; 30 Ind. 573 ; 36 Ind. 31 ; Herman on Estoppel, Section 1221, and the numerous authorities there cited ; Bigelow on Estoppel, p. 214.

7. "A property holder cannot quietly permit money to be expended in work which benefits his land. under a contract with the city, and then deny the power of the city to make the contract. Where several taxpayers petition the Common Council to cause certain improvements to be made, as grading, macadamizing, or paving streets, and the improvements or work is completed in compliance therewith, without complaint or objection on their part, to the acts of the contractor or Common Council, in relation thereto, they are equitably estopped to deny that the Common Council had no constitutional power to do it. It would be the perpetration of a gross fraud, after their willing and active assent ; and when they impliedly consent that an assessment shall be made to pay for such improvements, whether the assessment is illegal or not. they are estopped from asking a court of

equity to interpose an injunction to restrain the collection of the tax." (Hermann on Estoppel, Section 1221, referring to over fifty decisions.)

### *Braughn, Buck, Dinkelspiel & Hart* for Defendant and Appellant:

1. Forced assessments, in which category this claim falls, cannot be recovered unless the forms and requiremenie of law have been strictly complied with. Dillon on Municipal Corporations, Sec. 610, vol. II, p. 710, and notes on pages 707, 708 and 710, and Columbus vs. Story, 35 Ind. 97. See generally ch. xix, Dillon on Municipal Corporations, vol. II, Sec. 640, and notes on pp. 740 and 741.

   The authority to make local assessments does not exist unless unequivocally conferred. It can be exercised no further than it is clearly delegated. Where the mode in which the authority shall be exercised is prescribed, it constitutes the measure of the power and must be followyd. Fayssoux vs. Succession Chaurand, 36 Ann. 548 and 549; Abbott on Corp. 487; Dillon on Mun. Corp., vol. I. p. 362, Sec. 246; Cooley on Taxation, 418; Burroughs on Tax., Sec. 128, p. 372, ch. xix,

2. A statute delegating power to charge the property of individuals with the expense of local assessments, must be strictly pursued, and any departure in substance from the formula prescribed by the statute vitiates proceedings under it.

   That which the Legislature has directed to be done in such case, the courts cannot declare immaterial and none of the steps prescribed can be held to be directory merely.

   Commissioners required to take an oath "faithfully and fully to discharge the duties," took an oath "to the best of their ability."

   In an action brought to restrain the collection of the assessment, held, that the failure to take the presribed oath renderetl the proceedings illegal. Merritt et al. vs. Village of Portchester, 71 N. Y. 309.

   In Thompson vs. White (4 S. and R. 35), the word "firmly" was omitted in an oath. In Cambria street (75 Penn. St. R. 357), officers were required to take an oath; that they would "impartially discharge their duties," and they had substituted "faithfully" for "impartially," in the oath as administered, and it was held fatal to their power to act. 71 N. Y. 313; 46 Barb. 333, and other authorities cited therein.

   " The commissioners made four successive reports to the Board of Trustees, the latter sending the same back three times for revision and correction. and the commissioners on each occasion made a new estimate and assessment, and gave new notice to parties interested to present their objections in writing. Each assessment was independent of every former. assessment, and the same steps were required for its perfection." 71 N. Y. 309-315.

   " The commissioners having acted upon the application for this new road and adjudged it to be for the common convenience to a certain extent, and made return of their proceedings, which were recorded, were *functi officio* in regard to this new road, upon that application. Their further proceedings without an application are void as a judgment of a court without a writ would be."

   This is the language of the Court in 10 Pickering (Mass.). p. 269. It is stated by the Court in 13 Pickering (Mass.), p. 196. that the Chief Justice, who prepared this opinion, died before any formal action was had thereon by the court, and the case was finally pronounced upon. leaving the principle decided in the first report of the case as still an open question.

3. The contract was not preceded by the formalities prescribed by law. It is not responsive to the petition of property holders, and no recovery should be had thereon, or on a *quantum meruit*. Dillon on Mun. Corp., Sec. 642, No. 2, p. 741; 56 N. Y. 257; 43 Barb. 48.

   The petition of property holders is the basis of jurisdiction and power.

   The sole power of the City Council is to carry out the wish of the petitioners, and to bind all property holders this must be done in the manner prescribed by law.

   Where property holders petition the Council for paving certain streets, recited in their petition describing the extent and limits of the street purported to be represented, the petition

## 254     SUPREME COURT OF LOUISIANA.

is good for the exact limits described, and a contract for paving made upon such petition omitting a material part of the street or streets designated, renders the contract null and void as to front proprietors; especially as to those who have in no manner taken part in procuring the contract for paving.

The two roadways on St. Charles avenue, described respectively as St. Charles avenue, river or south side, and St. Charles avenue, swamp or north side, constitute two separate and distinct streets.

Proceedings for paving same, under Section 32 of Act No. 20, Acts of 1882—the City Charter—should be conducted separately, with reference to each street, on pain of nullity of the proceedings. Marquez vs. City, 13 Ann. 319 ; Correjolles vs. Succ. of Foucher, 26 Ann. 362.

4. Under the strict construction to which contracts as that sued on are subjected, the limits of streets designated by petitioning property holders who describe themselves as owning property on "St. Charles avenue, between Lee Circle and Carrollton," and the ordinances and contract based thereon, made for paving to be done "from Lee Circle to Carrollton," must be taken literally and interpreted to mean to, and not to the upper end, of Carrollton.

This defect appearing on the face of the contract and the ordinances, can be urged under the general issue.

If it be contended that the words may mean something more than to Carrollton, they are ambiguous and parole testimony is admissible to show what was meant and how the words were interpreted by parties sought to be affected.

The evidence, in this regard absolute and uncontradicted, shows that defendant and others believed that that the words were understood as intending to carry the pavement, on both sides, to Carrollton or "Lower Line street"—being the boundary between New Orleans and Carrollton before the consolidation.

5. The petitioning property holders, under Section 32 of the charter, must constitute and represent a fair average of the total street or given distance to be paved; it is not within the spirit or the letter of the law that the upper extreme of a street five miles long can be ordered paved on a petition of property holders, who, with one single exception, own property over a mile below the upper terminus.

6. The City Charter of 1882 repeals Act No. 73 of the Acts of 1876. Under the Section 32 of the City Charter and the decisions of this Court in the Marquez and Correjolles cases, the property holders are only liable for one-half the cost of the paving and not for two-thirds, as claimed.

7. The stipulation for eight per cent interest in the contract cannot be enforced. The Mayor was altogether unauthorized by the city ordinances—and if he had been, the stipulation would still be invalid. It is ultra vires.

The decision of this court to the contrary is not conclusive as authority. The reasoning of the court is not satisfactory, and facts of the case are not stated. One decision on a question not settled by positive legislation, or where a question is shown not to have "been thoroughly investigated, will not settle the law." Lagrange vs. Barre, 11 Rob. 302; Smith vs. Smith, 13 L. 445.

8. There is an error in the measurement of defendant's property. The testimony shows that twenty-four feet must be deducted and the amount, if judgment goes against him, accordingly reduced.

9. The asphalt paving as contracted for by plaintiff is a patented pavement. The city is without right to order paving at the cost of front proprietors on the petition of an insignificant number of property holders, of an expensive and patented character. Dillon on Mun. Corp., Secs. 389 and 390 ; 23 Wisconsin, 590 ; 26 Ann. 1 ; Burgess, Bennet et als. vs. The City of Jefferson et als., 21 Ann. 143.

Plaintiff attempts to show that the paving in question is not a patented pavement. It was

so given out by its advertisements and so described. The principle of competition enunciated by the statute could not be observed by the council in letting out the contract, and defendant cannot be compelled to pay the charge assessed against him for the alleged improvement.

10. The defendant in this case is not "estopped" from setting up his defenses to plaintiff's demand. "Estoppel" is an equitable plea which prevents one from escaping the consequences of his own acts or declarations. See authorities in brief.

Even if the doctrine of estoppel could be invoked as arising under conditions such as those involved in this case, it could only be done in a suit on a *quantum meruit*.

This suit is brought to recover the amount of the "forced assessment" as such, without regard to the equity or correctness of the price charged or the benefit conferred.

*B. R. Forman* on the same side.

————

The opinion of the Court was delivered by

WATKINS, J. Claim is made by the plaintiff for $2164 65, as two-thirds of the contract price of laying a street asphalt pavement on St. Charles avenue, in front of the defendant's premises, with eight per cent interest from the 1st of August, 1885.

It avers that, on the 13th of October, 1883, by an act passed before a notary, it made a contract with the City of New Orleans, through her Mayor, who was duly authorized thereto by ordinance, to lay street asphalt paving on St. Charles avenue, in said city; and that said contract was made and said paving done, in accordance with and in pursuance of Sections 21 and 32 of Act 20 of 1882, Act 73 of 1876, ordinances numbered 239 and 451, Council Series, and other laws and ordinances on the same subject-matter, in force at the time.

It further avers that, previous to making said contract, the property holders on said avenue having the legal requirement of feet front, petitioned for the construction of a street asphalt pavement, and said petition was duly and legally advertised, and as recited in Ordinance No. 239, C. S.

That, at the time of the adoption of said ordinance, the execution of said contract, and the presentation of said work, the defendant was a front proprietor on said avenue, and owned a front on the south side thereof, between Carrollton avenue and Dublin street, of three hundred and twenty-five feet, "and is liable for the paving, curbing and other work done under said contract in front of his property, as far as the neutral ground, to the amount of two-thirds of the contract price thereof—the capital sum and interest above stated—with lien, privilege and right of pledge, as stipulated in Act 73 of 1876, duly recorded.

It further shows that, upon the completion of the work, a certificate was obtained from the City Surveyor, and Commissioner of Public

Works, duly approved by the Mayor, attesting the completion of same according to contract, and which certificates are annexed to and made a part of the petition.

This claim is met by no substantial defenses, on the part of the defendant, but, on the contrary, by a technical exception to the duplicity of the petition, in the first instance, and by sundry technical objections to the formality of the proceedings, and of the manner of plaintiff's pursuance of them.

They may be epitomized as follows, viz:

1. An exception, that plaintiff's reference to Act 73 of 1876, and Act 20 of 1882, without specifying upon which it relied as authority for its contract, made its petition vague; and that, as the provisions of those acts are *inconsistent*, it should be ordered to elect between them.

2. That Act 73 of 1876 was repealed by Act 20 of 1882.

3. That the contract provided for the laying of a patented pavement, in violation of the letter and spirit of Section 21 of Act 20 of 1882, which requires that all such work shall be awarded to the lowest bidder.

4. That plaintiff's demand for a forced assessment is a tax, in the sense of Article 209 of the Constitution, and the power of the city to levy taxes thereunder, for the year in which said contract was made, was exhausted before same was made, and it is *ultra vires* and unconstitutional.

5. And that the work contemplated in said contract was one of public improvement, in the sense of said Article 209, which could not be undertaken at their expense, without a vote of the property taxpayers; and for this reason the demand is illegal.

6. That St. Charles avenue is, in fact and in law, two streets, separate and distinct from each other, with a strip of land between them, of about thirty or forty feet in width, which is designated as "neutral ground," and owned by the corporation, and used by the New Orleans and Carrollton Railway Company, under a contract with the City Council; but, in the petition of the property holders, and all subsequent proceedings, the same were treated as one single street — the property holders residing on any and all parts of either, signing same indifferently — and, that such petition and subsequent proceedings were thereby vitiated, and did not create forced liability on the property holders, on either of said streets.

7. That said petition was not signed by the requisite number of owners prescribed by Section 32 of Act 20 of 1882, whether said section is construed to mean one-fourth of the owners in number, or the owners

of one-fourth of the property fronting on the street; and this is particularly true of the south, or river side of the avenue.

8. That many of the signatures affixed to the property holders' petition were unauthorized, and cannot be counted, in ascertaining the number of front feet.

9. That St. Charles avenue, from Lee Circle to Madison avenue, Carrollton, is four or five miles in length, and that his property is situated near or at the upper end of Carrollton, and that it is not the spirit or letter of the law, that the full length of the same should be considered and treated as a unit, on which the one-fourth frontage is to be calculated; as, in so considering and treating it, property holders exclusively at one end " might bind the owners to an extension of three times more the distance; * * * and that for a distance of one mile, at least, from (his) property, much less than one-fourth in number, or amount of frontage is represented in said petition."

10. That the contract is null and void, because the property holders' petition called for street asphalt pavement, " according to specifications of the City of Washington," and this condition was not observed therein; the pavement contracted for differing therefrom, in essential particulars.

11. That said petition " was intended to and did ask for the paving of St. Charles avenue, from Lee Circle to Madison avenue, Carrollton, * * * and that the contract, as now sued on, was awarded and executed for the paving of certain portions of said avenue, the whole of the roadway on the swamp side, from Louisiana to Carrollton, being excluded and not paved."

12. That, after the publication of the petition, material changes were made, in the width of the roadways that were paved.

13. That the specifications for the work, and the contract on which publication for bids were made were not adhered to in many particulars, and the bond and security stipulated were not given.

14. Neither the specifications nor the contract stipulate the respective proportions payable thereunder by the city and the property holders; and the city was without authority to contract for a *rate* of interest in excess of four per cent.

15. That if Act 73 of 1876 be held to have been repealed by Act 20 of 1882, he insists that the provisions of the *former* were not within the contemplation of either of the parties at the commencement of proceedings, and that " all acts are expressly and in terms set forth, in all ordinances and publications, done or intended to be done, under Sections 21 and 32," of the latter.

16. That there never was an absolute or independent vote taken by the council for the paving of St. Charles avenue, as contemplated in the Act of 1876, "and, the alleged passage of ordinance No. 239 C. S., by a two-thirds vote, if true, is not an independent expression of the legislative will of the council" for the purposes defined in the act.

17. That, if it be held to have been passed by such a two-thirds vote, same is absolutely null because the "notice of intention" contemplated by said statute was not given, and that same was a condition precedent thereto.

The elaborate answer of the defendant is concluded by an alternative averment that, in any event, his liability cannot exceed one-half the cost of the pavement of the avenue immediately in front of his property.

We have been at great pains to critically analyze the answer, and state the various objections urged therein, in order that our opinion should not pass its limits. We will take them up, and dispose of them in the order of their proper sequence.

I.

Before going into the trial, the plaintiff's counsel caused the following entry to be made upon the minutes of the court, viz:

"Counsel for defendant having called upon counsel for plaintiff to elect, according to defendant's interpretation of his petition, upon which Act, namely, Act No. 73 of 1876, or Act No. 20 of 1882, plaintiff relied in support of the validity of his contract as to form, counsel for plaintiff states that, so far as matters of form are concerned, he relies upon Act No. 20 of 1882, and so far as the proportion of payments to be made by the property holders is concerned, and for his remedies, that he relies upon Act No. 73 of 1876, as stated in the petition and contract."

This fully responds to the defendant's exception.

Plaintiff's counsel entertained the opinion that the provisions of the two acts were not inconsistent, and thus believing they had a perfect right to urge them alternatively in their pleadings, as they are alleged to have done in their proceedings. Their right so to do cannot be tested by a dilatory exception. It is a matter for the merits.

II.

Section 1 of Act 73 of 1876 designates the method of proceeding on the part of property holders who desire to have street-paving done, and, also, on the part of the City Council—including the petition, advertisement, memorial of opponents, adjudication of the work, the manner of paying the cost of same, and by whom it shall be paid.

It is conceded by the plaintiff that Section 32 of Act 20 of 1882, covers the same ground, and that the provisions of the former are necessarily superceded thereby, the latter repealing " all acts in conflict, inconsistent with, or contrary " thereto. Section 37.

But Section 2 of the Act of 1876, provides " that whenever * * paving * * is made upon a street * * having a strip of land, or neutral ground running through the middle, not private property, with a roadway on both sides, two-thirds of said * * paving * * shall be borne equally by the owners of real property fronting upon the roadways, according to the running front foot of property abutting on either of said roadways; and one-third of the cost shall be paid by the City of New Orleans."

Section 3 of that Act provides " that all payments shall be made upon the certificate of the Administrator of Improvements and City Surveyor, and which certificate shall be *prima facie* proof of a compliance with the contract, and due performance of its obligations; and which said contract, when duly passed before a notary, and signed by the Mayor shall be *prima facie* proof of due observance of all antecedent forms and requirements of law." It further provides "that the cost of said * * paving * * shall be, and is hereby, constituted a real charge in and upon said real property * * * and the same shall be deemed, considered, and treated as pledged for the payment of said cost * * and that it shall be sufficient to record the certificate of assessment, or performance, of the City Surveyor, etc."

Upon a critical examination of the Act of 1882, there have been found no provisions upon the same subject-matter, as that cited in Sections 2 and 3 of the Act of 1876, and the two cannot be said to be, in any sense, in conflict, inconsistent with, or contrary to, each other; and, hence, those of 1876 are not, *co nomine*, repealed. But, it is argued that, inasmuch as the Act of 1882 is the city charter, the presumption *juris et de jure* is, that it is full and complete, and contain *all* the powers the Legislature intended the city should possess or exercise, and such an interpretation, necessarily implies 'that *all* the provisions of the Act of 1876, on the subject of paving streets of the city, are repealed.

In this view, it is well to take into . consideration contemporaneous legislation, and its judicial interpretation, in order to properly appreciate the purpose of the Legislature in enacting the provisions last quoted from that act.

Section 119 of Act 164 of 1856, which is identical with Section 32 of Act 20 of 1882, *ipsissimis verbis*, was examined and applied, by our predecessors, in Marquez vs. City of New Orleans, 13 Ann. 319, to a con-

tract quite similar to the one under consideration, for the grading and shelling "of Claiborne street, on the north side of the middle ground, or promenade, of said street, from St. Bernard avenue to Elysian Fields street." The contractor sued the various front or abutting proprietors . for their respective proportionate shares of the whole cost, but resistance was made on the ground "that the City of New Orleans is the owner of middle ground or promenade, located in the centre of Claiborne street, and fronting said shellroad," and is liable for one-half of the cost of the work; and. judgments were rendered accordingly in the district court, and the same were acquiesced in. Subsequently, suit was brought against the city, on that theory, and she was held liable by this Court for one-half the cost.

The Legislature of 1868 enacted a statute authorizing the police jury of the parish of Jefferson, left bank, to direct the construction of a shellroad, or Nicolson pavement, to connect the then .existing Nicolson pavement, from the upper line of the City of Jefferson, on St. Charles street, to the upper line of the City of Carrollton, on the right hand side of the New Orleans and Carrollton railroad track, and to assess the property owners with the cost thereof. One Correjolles became the adjudicatee of the work, and, upon proper certificates of its completion, he instituted suit against the succession of Marquis Louis Foucher, whose property fronted on the south, or river side of said street, opposite that upon which the shellroad was constructed. Our predecessors said in that case :

"The payment of the plaintiff's bill is resisted on the plea that the middle ground of the street, which is now used by the New Orleans and Carrollton Railroad Company as a train way, is either the property of the railroad, or of the public, and, in either case, the city is bound to sustain its portion of the expense of shelling the road. The defendant denies that his lands, lying south of the street, are bound for any part of the taxes.          *          *          *          *          *          *          *          *
"It seems that the only question in which the defendant is concerned, presented in this case, was decided in the case of Marquez vs. The City of New Orleans. 13 Ann. 320. In that case the court held that the middle ground of Claiborne street belonged to the city as a locus publicus, and that the city was bound to bear one-half the expense of constructing a road on the north side of said street, the entire expense of which it was sought to impose upon the proprietors of the north side. That case and the one at bar seem to be identical. With that view of the case, the judge a quo decided in favor of the defendant, and we

think correctly." Correjolles vs. Succession of Louis ·Foucher, 26 Ann. 362.

Yet, we find in Section 24 of Act 7 of 1870, extra session, the identical provisions of the Act of 1856 *supra* reported, and they remained in force until the passage of Act 73 of 1876, which appears to have embodied in it the substance, and purport of the decisions from which we have quoted. Now, when we consider the fact, that Section 32 of Act 20 of 1882 is identical *mutatis mutandis* with the statutes of 1856, and· 1870, the idea of Sections 2 and 3 of Act 73 of 1876 being repealed, appears to us utterly untenable. Those are the only statutory provisions extant, which relate to the paving of *unpaved neutral ground* streets of the City of New Orleans. If it be repealed,.the *jurisprudence* would be unaffected thereby, and would be strictly applicable to the existing statute, as it was to those preceding it. But the existence of that jurisprudence exhibits a necessity for a statutory regulation on the subject, and, therefore, it is not correctly assumed by the defendant's counsel that the *omission* of any such provision from the city charter, of necessity implies the repeal of a former, *containing* it.

In addition to this argument and authority, the Legislature itself placed an interpretation on the question of this alleged repeal; for, in an act 'amendatory of said Section 32 of Act 20 of 1882, it was specially provided " that nothing herein shall be construed as affecting Act 73 approved March 30th, 1876, as to the paving of neutral grounds, or streets adjacent to the levee." Act No. 113 of 1886. *Vide* Faissoux vs. Succession of Baroness de Charand, 36 Ann. 5407.

### III.

An important question in the case is whether the contract awarded, and the plaintiff constructed a patented pavement or not; the theory of defendant's counsel being, that if it was a patented pavement, the city's adjudication was null, because it· violated the letter and spirit of section 21 of the city charter, which provides that all contracts for public work shall be awarded at public auction to the lowest bidder, or given to the one making the lowest sealed proposal therefor.

Their contention is that there could be no real and practical competition for the work, without the observance of this formality; and that effective competition is of the essence of such a contract.

Whilst there are some well considered opinions which appear to sanction a contrary view, we prefer to follow that announced in Burgess Bennett et als vs. The City of Jefferson, 21 Ann. 143, which is to the

effect that there can be no practical competition for a patented pavement.

Accepting this theory, necessitates an examination of the evidence, in order to ascertain the truth or incorrectness of defendant's charge.

On the trial, defendant's counsel introduced in evidence, the assignments by E. J. DeSmidt to the plaintiff of two patents, and an application for another; but the *patents were not introduced,* and the application does not appear to have been granted.

Patents numbered 236,995 and 237,662, issued to defendant, were offered, but same were accompanied by assignments to *other* persons than the plaintiff.

If either of the first three mentioned patents, for improvements in refining asphaltum, are assigned to the plaintiff, it should have been produced by the defendant, as the burden of proof was on him.

They were of easy access. The law requires that all patents, and the transfer or assignment thereof, shall be recorded in the Patent Office at Washington, on the penalty of same becoming void, as to any purchaser or mortgagee. U. S. Rev. Stats. Secs. 481, 4883, 4898.

But, in addition to this, an examination of the specifications on which the contract was awarded and, in pursuance of which, the work was done, discloses that the quantity and character of the material, and the method of laying the pavement, which are set out with great care and particularity. They provide that "the pavement shall be of an uniform thickness of two and one-half inches of sheet asphaltum, when compressed, laid on a base of hydraulic cement concrete, of an uniform depth of six inches."

They require that this concrete base shall be made of English Portland cement, and sharp washed sand, mixed with broken hard-stone, brick, pebble, or sound Lake shells. They provide that the wearing surface, or pavement proper, shall be of "pure, refined asphaltum, *unmixed with any of the products of coal tar,*" and shall be composed of four ingredients, viz:

1. Refined asphaltum.

2. Heavy petroleum oil.

3. Fine sand.

4. Pulverized carbonate of lime.

Making a comparison of these ingredients, with the specifications accompanying the DeSmidt patents, it becomes manifest that the latter were not *used* by the plaintiff in laying the pavement in question, for the reason that those patents were restricted to improvements "in the

act of preparing *coal tar products* for use in bituminous cements, or compositions for paving and other purposes."

To make it plain, there was a stipulation in the specifications of the City Surveyor, that "parties desirous of bidding, but whose process of street asphalting differs from these specifications, and which may be as *per* specifications of Washington, D. C., are requested to forward bids, with the difference well explained"—thereby clearly indicating that a patented pavement was not in contemplation of the City Council, in advertising for bids, and that competition was expected and invited in awarding the contract.

It is in proof that asphaltum is imported from Trinidad, by several companies in this country and in Europe, and that it can be purchased in New York and other markets of the United States. It is defined to be a mineral pitch which occurs on the shores and surface of the Dead Sea, which is styled the Asphaltic Lake; and is found in many parts of Asia, Europe and America. Webster, *verbo :* Asphaltum.

The testimony, also, shows that there are several companies in the United States engaged in laying street asphalt pavement in accordance with the Washington specifications, which are nearly *verbatim* copies of those under which plaintiff bought the contract under consideration ; and, that, under them, any one of them, or any other company could have laid the pavement on St. Charles avenue, as plaintiff did.

We have no hesitancy in deciding that this complaint of the defendant was properly decided against him in the court *a qua.*

## IV.

Conceding for the argument, that the city had levied annual taxes for the year 1883, and for every year thereafter, up to the limit prescribed by Article 209 of the Constitution, and had, in each of said years, exhausted its powers of taxation thereunder, does it follow, therefore, that the forced assessment against the defendant is either illegal, *ultra vires*, or unconstitutional ? Is such a forced contribution a tax, in the sense of that Article ? Certainly not.

That Article provides that "the State tax on property, for all purposes whatever  *  *  shall not exceed, in any one year, six mills on the dollar of its assessed valuation  *  *  *  and no parish or *municipal tax* for all purposes whatsoever shall exceed ten mills on the dollar of valuation."

These provisions have exclusive reference to the *ad valorum* taxation of the property of all the inhabitants of the city, for purposes of *revenue* only.

The contribution sought to be levied on the defendant's property is not such " municipal tax " as is contemplated by them. It is plain that no tax has been laid on the defendant's property, and that the improvement was not placed *upon* it; but it was placed on a public thoroughfare of the city, and the council authorized its construction, at the joint expense of the front proprietors, upon the ratio of a corresponding benefit conferred upon the property. The performance of the work creates an indebtedness to the contractor, and not to the city; and it is collectible by suit, and not by summary proceedings for a forced expropriation.

Such a distinction has been frequently recognized by us in recent decisions.

In Delcambre vs. Clere, 34 Ann. 1051, we said: "There is a recognized distinction between the taxing power and the police power conferred on corporations; licenses or taxes may be imposed on certain branches, as a regulation under the exercise of the latter power, but it must plainly appear that they are imposed strictly and exclusively in aid of such power, and not for the purposes of revenue. The rule is, that mere " police power, and the right to make all needful regulations under it, gives no right to tax for *revenue*." Mestayer vs. Corrigè, 38 Ann. 711.

Dillon says " the taxing power is to be distinguished from the police power *   *   *   * The power to license and regulate particular branches of business or matters, is merely a police power; but when licenses, fees or exactions are plainly imposed for the *sole*, or main purpose of *revenue*, they are in effect 'taxes.'" 2 Dillon's Munic. Corp. Sec. 609.

The same author says the Constitution of California requires that *taxation* shall be equal and uniform throughout the State, but that the Supreme Court of that State holds that the word " taxation," as used therein, "refers to general taxes to defray the ordinary expenses of the State, and its subordinate local governments, and not to assessments for local improvements; that *taxation* was intended to be exercised upon the basis of value, so as to secure equality and uniformity; that *assessments* ( though a branch of the taxing power ) need not necessarily be exercised on the *ad valorem* principle, but the Legislature is at liberty to adopt a different mode or basis of apportionment, such as frontage, benefits received, or superficial contracts." Ibid sec. 599, citing: Emery vs. Gas Company, 28 Cal. 345 ; Hart vs. Garin, 12 Cal. 476; Argenti vs. San Francisco, 16 Cal. 255.

"So in Louisiana, according to the later, if not the earlier, cases, local municipal assessments for local improvements are valid, although

the Constitution provides that all *taxation* shall be equal and uniform throughout the State; such assessments are not *taxation* within the meaning of the Constitution requiring uniformity of taxation." Ibid sec. 600, citing: Stuart Cases, 20 Ann. 499; Gratman vs. Crandall, 11 Ann. 220; The Draining Company, id. 371; Wallace vs. Shelton, 14 Ann. 503; O'Leary vs. Sloo, 7 Ann. 25; Municipality vs. Guillotte, 14 Ann. 295; 2 Dillon's Munic. Corp. Secs. 617, 619.

On this subject Judge Cooley says:

" A like principle is sometimes applied to the construction and improvement of the streets. These, as has been said, constitute highways for the accommodation of the general public, but are calculated, by their improvement, to increase largely the value of all property fronting on, or lying in the immediate vicinity of them. Should the Legislature determine that the cost of a street improvement should be borne in part by the whole city, and, in part, by an assessment made upon the basis of benefits within a district to which the improvement was exceptionally valuable, we know of no valid objection that could be interposed." Cooley on Taxation, p. 117.

" Special assessments are a *peculiar species of taxation*, standing apart from the general burdens imposed for State and municipal purposes, and governed by principles that do not apply generally. The general levy of taxes is understood to exact contributions in return for general benefits of government, and it promises nothing to the persons taxed, beyond what may be anticipated from an administration of the laws for individual protection, and the general public good. Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be specially, and peculiarly benefitted, in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and, in addition to the general levy, they demand that special contributions, in consideration of the special benefit, shall be made by the persons receiving it." Ibid pp. 416, 417, 418, 420, 422, 423.

This and kindred questions were carefully examined and decided in Charnock vs. Levee District Co., 38 Ann. 323, and Planting and Manufacturing Company vs. Tax Collector, 39 Ann. 461; and the principles announced by the text writers quoted from were affirmed as strictly applicable, under our present Constitution.

It is our decided conviction that the statute, and special assessment involved in this discussion, are constitutional and legal.

## V.

The argument and authority cited in the last paragraph are applicable to this proposition as well.

The *proviso* to Article 209 of the Constitution declares " that for the purpose of erecting and constructing public buildings, bridges and works of public improvement in the parishes and municipalities, the *rate of taxation herein limited* may be increased when the rate of such increase, and the purpose for which it is intended shall have been submitted to a vote of the property taxpayers of such parish or municipality * * and a majority of same voting at such election shall have voted therefor." The one contemplated is, as shown in the preceding paragraph, an *ad valorem* taxation on all property, generally.

Article 209 *et sequentes* must be construed and harmonized with the provisions of Article 46 of the Constitution, which reserves to the General Assembly plenary power to deal with the corporation of the City of New Orleans, at will.

## VI.

Preliminary to the discussion of this, and subsequent grounds of objection, which are mainly directed against the proceedings of the different parties, it is well to examine the standpoint occupied by them, and ascertain upon whom the *onus probandi* rests. It must be borne in mind that Section 3 of Act 73 of 1876 provides, that the certificates of the Administrator of Improvements and City Surveyor " shall be *prima facie* proof of a compliance with the contract and due performance of its obligations; and that said contract, when duly passed before a notary, and signed by the Mayor, shall be *prima facie* proof of due observance of all antecedent forms and requirements of law."

This is a well recognized principle, for Dillon says: " If the work has been done in a manner satisfactory to the corporation, and has been accepted by it, a *prima facie* case is made out." 2 Dillon's Munic. Corp. Sec. 650.

"The Legislature may provide for a summary collection of taxes and assessments and declare what shall make a *prima facie* case." Ibid, Sec. 651.

Judge Cooley says on this subject:

" It is no defense to an assessment that the contract for the work was not performed according to its terms. The proper authorities must decide upon this, and, if they accept the work, the acceptance, in the absence of frauds, is *conclusive.*" Cooley on Taxation, p. 468.

The same principle was announced by our predecessors in Municipality vs. Guillotte, 14 Ann. 295, in these words, viz:

"In the absence of proof of fraud, the acceptance by the corporation of work which it was authorized to contract for, is *prima facie* evidence against the defendant, so far as relates to its completion, and the manner in which it was done."

Hence it appears that the *onus* is on the defendant to show plaintiff's non-compliance with its contract, the non-performance of its obligations thereunder, its *non*-observance of antecedent forms and requirements of law, and the *non*-completion of the work.

The certificate of the Commissioner of Public Works, under the city charter, takes the place of that of the Administrator of Improvements, under the statute of 1876. The certificates of the Commissioner and City Surveyor, as well as the notarial contract of the plaintiff with the Mayor, are in evidence; and proof is abundant of the city's acceptance of the work performed.

This question being settled, we may proceed with the discussion of the questions remaining.

We do not regard it as material, that the property holders' petition, and other documents and contracts treated St. Charles avenue as a whole, and did not mention it as consisting of two distinct roadways separated by a neutral ground belonging to the municipality — conceding the facts to be as stated, *arguendo* — because the greater includes the lesser, and there is no provision of the law violated thereby. This avenue is dealt with throughout all the proceedings as a double, or neutral ground street, possessing two distinct and separate roadways. While it may be true that the property holders, on either side of the street, or roadway signed the petition indifferently, they must be *counted separately in making the computation of proprietors* owning the abutting properties, for the purposes of special assessment. This is a question of proof, and not of the technical sufficiency, and formality of proceedings.

## VII.

Section 32 of Act 20 of 1882 provides that, "whenever *one-fourth the owners of real property* * * * shall, by petition *signed by the petitioner, or petitioners,* and addressed to the council of said city, etc." and, it is argued by defendant's counsel, that this language implies that one-fourth of the persons owning front property on the avenue is meant, and not the owners of one-fourth of the real property fronting on the street. Such a construction would be manifestly unjust, because, by this method of computation, a large number of persons owning a small front, would

carry greater strength than a small number owning many large properties; and we understand that to be the very ground of his *ninth* objection. But, such a construction is an erroneous one, because section 35 provides that "the majority of owners within the meaning of Sections 32, 33 and 34 of this act shall be construed to be *the owner, or owners* of a majority of running feet of real property fronting on the street, or portion of the street to be paved, etc." If "the majority of owners" in that section is intended to mean the memorialists opposing the improvement, it must apply equally to the petioning property owners.

It is the clear meaning of the phrase that such petition may be "signed by the petitioner *or* petitioners," that a majority of the abutting property was intended.

We have already ascertained that the provisions of Section 119 of Act 164 of 1856 are identical with those of Section 32 of Act 20 of 1882 — *vide* paragraph II *supra* — a further examination of the two acts shows that Section 122 of the former is identical with section 35 of the latter. The result is that the phrases, "the majority of owners, etc." and "the owners of a majority, etc." are construed to be convertible, and of the same import. Daniel vs. City of New Orleans, 26 Ann. 4.

On the trial, the defendant offered no affirmative proof in support of his objection, and, in its absence, the notarial contract, which furnishes *prima facie* proof of compliance with all antecedent *forms* of law, is sufficient to defeat this objection. Section 3, Act 73 of 1876.

Such was the jurisprudence at the time of the passage of that act, for it was said in O'Hara vs. Blood, 27 Ann. 57:

"We find a petition signed by a number of persons representing themselves as property holders on Locust street, asking for banquettes to be constructed on that street. On the principle that *omnia presumuntur rite esse acta,* we must suppose that the persons petitioning constitute onefourth of the property owners on that street. The defendant has offered no answer to rebut the presumption." Webber vs. Gottschalk, 15 Ann. 376.

This is a recognized principle of construction in Federal jurisprudence. Gelpcke vs. City of Dubuque, 1 Wall. 221.

But we have the distinct admission in the defendant's brief (p. 24), "that if the river side of the avenue, alone, be taken, the number of signers exceeds one-quarter, unless your Honors hold that the *per pro* signatures must be thrown out."

In as much as the proof shows, and the defendant's admission declares, that St. Charles avenue is composed of two separate and distinct streets, with a neutral ground dividing them — *vide* paragraph VI and

objection—the river side alone must be taken into consideration, in as much as defendant owns abutting property on that side.

We know of no hypothesis upon which we are required to disregard the *per pro* signatures appended to the petition. Defendant should have urged objection seasonably, or he should have offered some proof to show the same were unauthorized. Certainly, they furnish *prima faice* evidence, and that is all the plaintiff was required to do.

## VIII.

This objection is fully answered in preceding paragraph.

## IX.

A sufficient answer to this objection is that the *statute* treats *a street* as a unit for the purposes of all computations required, without regard to its length, and defendant's counsel is in error when he says " that it is not the spirit, or letter of the law, that the full length of the street should be considered and treated as a unit, on which one-fourth frontage is to be calculated, etc." *Vide* paragraph VII *supra.*

## X.

This objection is disposed of in paragraph III *supra.*

## XI.

A careful examination and comparison of the petition and contract fails to show any such discrepancy between them as is complained of by the defendant's counsel.

This objection conforms to the terms of the contract in admitting that it excludes " the whole of the roadway on the swamp side, from Louisiana avenue to Carrollton." That portion of the avenue was properly omitted, because the proof shows, and our opinion has declared—*vide* paragraphs II and III, citing 21 Ann. 143—in effect, that the part of said roadway which was excluded had been previously paved with Nicolson pavement, and hence proceedings for its *repavement* could only be taken in conformity with the provisions of Section 33 of Act 20 of 1852, and Act of 1876.

In paragraph VI we held that it was not material that this petition treated St. Charles avenue as a whole, and not as two separate and distinct roadways because it violated no provision of law. Such a petition operated full notice to the defendant because it included the south, or river side of the avenue on which his property fronted, and he is with-

out interest to inquire into the proceedings relating to the opposite side, or roadway.

### XII.

There is no proof of this objection; and, if there was, it appears to us to be perfectly immaterial, as there is no designation of the alterations which were made, nor any averment that same were not beneficial to the property holders. *Non constat* that defendant did not derive a benefit therefrom.

### XIII.

This objection is of similar import, as the one considered in the preceding paragraph, in part, and the same course of reasoning applies thereto; and the residue is fully answered by the evidence.

### XIV.

It is not a valid objection to urge against the specifications furnished by the City Surveyor, and the plaintiff's contract with the city, that neither of them stipulate the proportionate share of the cost to be borne by the city, and the property owner, respectively, because the statute regulates, and fixes their proportion of the cost. Section 2, Act 73 of 1876.

This question is fully discussed and decided in paragraph II *supra*. *Vide* Marquez vs. The City of New Orleans, 13 Ann. 19; Correjolles vs. Succession of Foucher, 26 Ann. 362.

We see no reason why the city did not have the power to stipulate eight per cent interest against defaulting property-owners. It would seem to be implied from her power to adjudicate the work, and to make the contract for the purchase price thereof, for which the property-owner and any future transferee, are personally bound. Sec. 3, Act 73 of 1876.

The Code says "the damages due for delay in the performance of an *obligation to pay money,* are called interest." R. C. C. 1935; and hence the stipulation of any rate, not exceeding eight per cent, would appear to be an incident of the obligation. R. C. C. 2924.

This precise question was decided in the Second Municipality of New Orleans vs. McFarlain, 3 R. 406, in which Judge Martin, in speaking for the court, used the following terse and pertinent language:

" The Municipality had the undoubted right of calling on the owners of lots, for a contribution to the expenses attending the paving of the streets before their respective property. In doing so, they might insist that those who delayed payment, should pay interest at eight per cent,

the delay being a facility which they were not bound to grant; and the owners might have avoided the payment of the stipulated interest by an earlier payment."

The defendant's counsel complains of the reasons assigned, as being insufficient, and of the decision itself as being an isolated one, and unsupported by subsequent opinions. To our thinking the reason is ample; and, while a single decision cannot be considered as having the force of *stare decisis*, it is entitled to due weight and consideration. We have no hesitancy in maintaing that the view, therein so concisely expressed, is strictly applicable to, and as decisive of the question in hand.

## XV.

While it is true that mention is made, *co nomine*, neither in the petition of the property-holders, the specifications, ordinances, nor the contract, of the provisions of Act 73 of 1876, it does not follow that they were not in the contemplation of the parties thereto, mainly for the reasons assigned in the answer of the plaintiff's counsel to the defendant's exception.

*Vide* paragraph I. If, as the plaintiff assigns, it relied upon them for its *remedies* in the enforcement of its contract, and for the ascertainment of the proportionate share of the cost of the work done by the abutting proprietors, only; and, upon those of the city charter as to all matters of *form*, only; was it not expedient that the latter should have been mentioned in, and the former omitted from the acts and proceedings?" We think so.

We said, in answer to the defendant's fourteenth objection that it was unnecessary that the proportionate share of the cost of the work done by the proprietors should have been stated; if not, why should the law have been referred to? *Vide* paragraph XIV *supra*.

## XVI AND XVII.

These two objections need not be discussed because they have been already eliminated from the argument, by reason of the city having acted under the sanction and authority of the special and exceptional provisions of Section 32 of Act 20 of 1882, and Sec. 2 of Act 73 of 1876, and not by virtue of the *general powers* of the council. *Vide* paragraph XI. Bennet Burgess et al. vs. The City of Jefferson, *supra*.

## XVIII.

The defendant's counsel insists that he is, at most, only liable for one-

half of the cost of the pavement in his front, and not for two-thirds thereof, as claimed by the plaintiff.

Section 2 of Act 73 of 1876, establishes the plaintiff's right to claim two-thirds, and in paragragh II of this opinion, we hold that it is unrepealed and in force, *pro tanto*.

## XIX.

Counsel proposed to amend their answer so as to specially aver defendant's exoneration from all liability by reason of the fact that the city ordinance and contract designated the portion of St. Charles avenue on which pavement was to be laid, as extending "from Lee Circle *to* Carrollton;" that this designation was not intended to *include* that part of the city which is ordinarily designated as Carrollton, of which Lower Line street is the lower limit; and "that this property is situated at the upper end of Carrollton." The amended answer was disallowed by the court *a qua*, and defendant's counsel retained a bill of exceptions. During the progress of the trial defendant's counsel offered evidence, by which to prove what was the understanding of the plaintiff and property-holders, at the time the work was in progress, with regard to the upper terminus, and it was admitted over plaintiff's objection and exception. Without traversing these rulings, it will suffice to say, that we consider this defense, only, an after-thought, and of little practical importance, inasmuch as the defendant's original *answer* places our interpretation on the phrase "from Lee Circle *to* Carrollton," exactly opposite to that proposed in his supplemental answer.

We quote from the original brief of the defendant's counsel, the following paragraph as taken from that answer, viz :

"The petition, such as it was, on the part of the signers and those interested, *intended to and did ask for the paving of St. Charles avenue from Lee Circle to Madison avenue, Carrollton*, and this petition so was published for the aforesaid purpose of serving as a basis for a contract for the paving of the whole of "St. Charles avenue," as understood, as aforesaid ; and notwithstanding the foregoing, the contract, as now sued on, was awarded and executed for the paving of certain portions of said avenue, the whole of the roadway, river or swamp side, *from Louisiana avenue to Carrollton, being excluded, and not paved.*" (Brief, p. 11.)

That part of the specifications furnished by the City Surveyor, referring to "roadways," stipulates that the portion of St. Charles avenue to be paved shall be "twenty-four (24) feet wide between Louisiana avenue and *Madison streets*;" and that the width of the sidewalks shall be "between Lee Place and Louisiana avenue, eighteen (18) feet; be-

tween Louisiana avenue and Lower Line street, or Carrollton, sixteen (16) feet; and *between Lower Line and Madison streets*, ten (10) feet."

If anything were needed to further enforce this language it is supplied by the plain and unambiguous terms of the material contract, which is as follows, viz:

"Said T. Tupper declared that, acting for and in behalf of said Barber Asphalt Paving Company, and on the terms and conditions, and for the considerations herein set forth, he agrees for, and binds said Barber Asphalt Paving Company, to pave with "sheet asphaltum" both sides of St. Charles avenue, from Lee Place to the upper side of Louisiana avenue, *and the east, or river side of St. Charles avenue, from Louisiana avenue to Madison street, Carrollton.*"

Reference to the sketch which was introduced in evidence by the defendant's counsel, discloses that *Madison avenue, Carrollton,* intersects St. Charles avenue, at an angle slightly acute, and *immediately above* the New Orleans and Carrollton railway station on one side, and the defendant's Carrollton garden and hotel on the other side. According to this sketch, the *upper terminus* of the pavement to be laid in pursuance of plaintiff's contract, was the *upper limit of the defendant's property,* and not Lower Line street—as contended by the defendant's counsel—it having anciently been the lower limit of the *town* of Carrollton, prior to its legislative incorporation into the City of New Orleans.

This argument includes, incidentally, the discussion of the *final* proposition, that the defendant is entitled to a credit for the cost of the construction of twenty-five feet of pavement, in that, he is sued for the cost of a frontage of *three hundred and twenty-five feet* from Carrollton avenue to Dublin street, whereas that frontage is only *three hundred and one feet.*

This deficit is claimed as being a deduction for the width of Dublin street. That might be correct if Dublin street intersected, or separated the defendant's property; but the said sketch shows that it does not. The testimony of the City Surveyor confirms this conclusion.

"Q. About how many feet—Madison avenue and St. Charles avenue, both being extended in direct lines—how much extension would be necessary for Dublin street to run into St. Charles avenue?"

"A. About fifty or seventy-five feet between the two. I stepped it off about two Sundays ago."

On this point the district judge says:

"The certificate of the city officers covers a distance of 325 feet from the corner of Carrollton avenue towards Madison street, and embraces some 24 or 25 feet of frontage which faces the open end of Dublin street.

I can see no error in the certificate; Dublin street does not cross St. Charles avenue, but stops short upon the north side ; hence there is no intersection, and the defendant is liable for the paving upon that part of his front just as on any other part."

After a most careful examination of the record, and the elaborate briefs of counsel, and a deliberate, and critical review of all the authorities cited, we feel constrained to say that the finding of the judge *a quo* in favor of the plaintiff, was correct.

Judgment affirmed.